IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARLON ESPINOZA-RODAS,
*Petitioner*,
v.

WARDEN CAROLINE DETENTION CENTER, *et al.*,
*Respondents*.

1:26-cv-02745-MSN-IDD

**ORDER**

This matter comes before the Court on Marlon Espinoza-Rodas's ("Petitioner") Petition for Writ of Habeas Corpus (ECF 1) in which he challenges the lawfulness of his detention by the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). Petitioner, a citizen of Honduras, received a notice of expedited removal pursuant to 8 U.S.C. § 1225(b)(1)(A) in November 2008. That same month, Petitioner was removed to Honduras. Petitioner illegally returned to the United States and on May 17, 2019, and was detained by immigration officials. Petitioner received a Form I-871, Reinstatement of Removal Order. After Petitioner stated a fear of returning to Honduras, ICE released Petitioner on an Order of Supervision ("OSUP"). On August 3, 2026, however, ICE officers arrested Petitioner when he reported to ICE officials after being requested to do so. Petitioner has been detained ever since that time. Petitioner contends that (1) his continued detention lacks a disclosed statutory and regulatory basis (Count I); (2) ICE failed to follow its regulations in revoking his OSUP (Count II); and (3) that his detention violates his right to procedural due process (Count III). For the reasons that follow, the Court will grant his Petition.

## I. BACKGROUND

Petitioner is citizen of Honduras. ECF 1 ¶ 1. He first entered the United States without inspection sometime before 2009. *Id.* ¶ 33. On October 20, 2008, Petitioner was encountered by

DHS officials during a traffic stop in Baton Louge, Louisiana. ECF 5-2 ¶ 6. Petitioner claimed he was a Mexican national and requested voluntary return to Mexico. *Id.* DHS officials agreed and Petitioner left the United States. *Id.*

On November 5, 2008, Petitioner was again encountered by DHS officials shortly after Petitioner unlawfully entered the United States. *Id.* ¶ 7. Petitioner admitted to being a Honduran national and was taken into custody and processed for expedited removal. *Id.* Petitioner was served with Form I-860, Notice and Order of Expediated Removal pursuant to 8 U.S.C. § 1225(b)(1)(A). *Id.* Petitioner was then removed from the United States. *Id.*

On September 29, 2009, Petitioner was encountered by immigration officials for a third time. *Id.* ¶ 8. Petitioner received a Form I-871, Reinstatement of Removal Order, and was transferred to another federal agency's custody to be prosecuted for illegal re-entry. *Id.* On January 26, 2010, Petitioner returned to DHS's custody to effectuate the September 29, 2009, reinstated removal order. *Id.* ¶ 9. Petitioner was again removed from the United States on February 3, 2010. *Id.*

On May 17, 2019, Petitioner was again encountered by immigration officials. *Id.* ¶ 10. Petitioner again received a Reinstatement of Removal Order. *Id.* Petitioner expressed a fear of returning to Honduras. *Id.* DHS then chose to issue Petitioner an OSUP and released him from custody pending a referral to USCIS for a Reasonable Fear Interview (RFI). *Id.* The OSUP stated that "[b]ecause the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under" certain conditions. ECF 6.

After receiving the OSUP, Petitioner moved to Hopewell, Virginia, and lived with his family. ECF 1 ¶ 36. Petitioner complied fully with the conditions of his OSUP. He missed no

reporting appointment, engaged in no unauthorized travel, address violations, failures to cooperate, criminal conduct, or supervision breaches. *Id.* ¶ 37.

In January 2026, ICE officials required Petitioner to wear an ankle monitor. *Id.* ¶ 38. At approximately 2:00 a.m. on Monday, August 3, 2026, ICE called Petitioner and asked for his location. *Id.* ¶ 40. Petitioner reported that he was at home sleeping. *Id.* The ICE officer stated that Petitioner's ankle monitor was not displaying Petitioner's location. *Id.* ¶ 41. The ICE officer asked Petitioner to report to the ICE office that morning so the ankle monitor could be adjusted or replaced. *Id.*

Petitioner complied immediately, meeting with ICE that same morning. *Id.* ¶ 42. Instead of adjusting or replacing the allegedly malfunctioning ankle monitor, ICE detained Petitioner. *Id.* Petitioner then received a Notice of Revocation of Release. ECF 5-1. The Notice of Revocation of Release purported to revoke Petitioner' OSUP pursuant to 8 C.F.R. § 241.4(*l*), stating that "[t]he purposes of release have been served." *Id.* The Revocation also stated that Petitioner's RFI "will be conducted while in custody." *Id.*[1] Federal Respondents suggest the revocation order was based on "DHS now ha[ving] sufficient allocated resources to detain Petitioner pending his RFI." ECF 4 at 4. On August 4, 2026, Petitioner received an informal interview regarding the revocation of his OSUP. ECF 5-2 ¶ 12. Petitioner declined to provide a statement or any documents in response. *Id.*

Petitioner was subsequently transferred to the Caroline Detention Facility, ECF 1 ¶ 44, and has been detained there since that time, *id.* ¶ 5. On August 24, 2026, Petitioner filed the present Petition. ECF 1.

[1] Petitioner was scheduled to have that interview on August 27, 2026, but the interview did not occur due to technical difficulties. ECF 5-2 ¶ 11.

## II. DISCUSSION

Petitioner argues that (1) his continued detention lacks a disclosed statutory and regulatory basis (Count I); (2) ICE failed to follow its regulations in revoking his OSUP (Count II); and (3) that his detention violates his right to procedural due process. The Court will grant the Petition with respect to Count II.[2]

### A. Revocation of Petitioner's Order of Supervision

The Immigration and Nationality Act's regulations create two different types of release following an order of removal. Under 8 C.F.R. § 241.4, "DHS may release a[] [noncitizen] under an order of supervision if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future." *Garcia-Rivera v. Noem*, No. 1:26-CV-229-MSN-WBP, 2026 WL 1244545, at *2 n.3 (E.D. Va. Mar. 2, 2026) (quoting *Phommachak v. Wesling*, No. 25-13894-BEM, 2026 WL 157491, at *4 (D. Mass. Jan. 20, 2026)). Alternatively, DHS may release a noncitizen under 8 C.F.R. § 241.13 "based on a determination that there is no significant likelihood of removal to the country to which [the noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3 (internal quotation marks omitted).

"The procedures required to revoke each of these forms of release are different." *Phommachak v. Wesling*, 816 F. Supp. 3d 201, 208 (D. Mass. 2026). An order of release under section 241.4 may be revoked where (1) the purposes of release have been served, (2) an individual violates his conditions of release, (3) it is appropriate to enforce a removal order, or (4) DHS determines that revocation is in the public interest. 8 C.F.R. § 241.4(*l*)(2). By contrast, DHS may only revoke release that was ordered under § 241.13 if it makes "(1) an individualized

[2] Because the Court grants the Petition with respect to Count II, it need not address Petitioner's other claims.

determination (2) by [DHS] that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.'" *Phommachak*, 816 F. Supp. 3d at 208 (quoting *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023)). "When § 241.13(i) governs revocation, the procedures outlined for revocation under § 241.4(1) do not apply." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3.

Here, Respondents purported to revoke Petitioner's OSUP under 8 C.F.R. § 241.4(*l*)(2), on the grounds that the "purposes of [his] release" had been served, and DHS had the resources to detain Petitioner pending his RFI. ECF 5 at 4; *see also* ECF 5-1. The text of Petitioner's OSUP, however, strongly suggests that Petitioner was ordered released under 8 C.F.R. § 241.13. ECF 6. His OSUP states that DHS ordered Petitioner's release on supervision "[b]ecause the agency has not effected [his] deportation or removal during the period prescribed by law." *Id.* at 1. This text matches § 241.13, which states that DHS shall release individuals "who are subject to a final order of removal and are detained . . . after the expiration of the removal period, where the [noncitizen] has provided good reason to believe there is no significant likelihood of [his] removal . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). In contrast, to release Petitioner under § 241.4, DHS would have had to conclude that travel documents were not available, Petitioner did not pose a risk to safety or flight, and was not likely to violate the conditions of his release. 8 C.F.R. § 241.4(e). None of these findings appear on the face of Petitioner's OSUP; therefore, the Court concludes that § 241.13—not § 241.4—governs Petitioner's OSUP and the revocation of his release. *See Herber Baldemar Caal Pop v. Markwayne Mullin*, No. 1:26-cv-1886, ECF 10 at 7-8 (E.D. Va. Jul. 23, 2026).

Applying § 241.13, the Court concludes that Respondents did not properly revoke Petitioner's OSUP. Under § 241.13, it is Respondents who bear the burden to prove that circumstances have changed and that Petitioner's removal has become "significantly likely in the

reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *3 (quoting *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025)). Respondents have not come close to meeting that burden. To begin with, ICE did not formally revoke Petitioner's OSUP until after it had detained him. *See* ECF 5-2 ¶ 11; ECF 5-1. Indeed, Petitioner was not served with Notice of Revocation until he was already detained at the Caroline Detention Facility. *Id.* His initial detention thus appears untethered to any basis in law. But, even setting that issue aside, there is simply nothing in the record to show that Petitioner's removal is likely. Federal Respondents acknowledge that prior to being removed, Petitioner is entitled to an RFI, an appeal of any negative determination to an Immigration Judge, and all subsequent review to which Petitioner is entitled. ECF 5 at 1. Although Federal Respondents *scheduled* an RFI to occur on August 27, 2026, that interview was not conducted due to technical difficulties and it is unclear when a rescheduled interview will occur. *Id.*

Respondents' showing is "plainly inadequate to establish a changed circumstance, let alone one that suggests removal has become significantly likely in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *3; *see also Rojas Toj*, 2026 WL 1458900, at *5 (concluding same).

Because Respondents have failed to follow § 241.13 in revoking Petitioner's OSUP and detaining him, and because that regulation was promulgated to protect Petitioner's right to due process, Petitioner's current detention is unlawful, and he is entitled to immediate release. *Garcia-Rivera*, 2026 WL 1244545, at *3; *see also Sokpa-Anku v. Mullin*, 1:26-cv-01504 (AJT/LRV), 2026 WL 1878709, at *3 (E.D. Va. June 29, 2026) ("In habeas cases where ICE revoked an OSUP in contravention of binding regulations, this Court has consistently vacated ICE's revocation of the OSUP and ordered the Petitioner's immediate release from custody.").

## III. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the Petition (ECF 1) is GRANTED; it is further

ORDERED that Federal Respondents immediately release Petitioner with all his personal property; it is further

ORDERED that Petitioner's Order of Supervision is RESTORED immediately and may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.13; and it is further

ORDERED Respondents and any of Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
Michael S. Nachmanoff
United States District Judge

September 1, 2026
Alexandria, Virginia